## GYPSY OIL CO. v. GREEN et al.

No. 11361—Opinion Filed June 7, 1921.

(Syllabus.)

**1. Master and Servant—Injury to Servant—Proof of Negligence—Safety of Tools.**

A master has some discretion concerning the kind of tools and appliances which he will use or furnish his servants. He is not required to furnish tools of any particular pattern or appliances constructed in any particular manner, provided the tools and appliances furnished are sound, reasonably safe, and perform the work which they are designed to do, and mere proof that he is using tools and appliances of a certain kind, if an accident happens in the use of them, does not tend to show negligence unless it is coupled with some evidence—not mere speculation—that they were not properly constructed or properly performing their function.

**2. Same—Burden of Proof—Presumption of Negligence.**

The fact that an employe is injured in the course of his employment, carries with it no presumption of negligence on the part of the employer, but such negligence is an affirmative fact for the injured employe to establish by the evidence.

**3. Negligence—Question for Jury.**

Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such question is properly for the jury.

**4. Master and Servant—Duty to Furnish Safe Place and Tools—Liability for Injuries to Servant.**

It is the undelegable duty of the master to exercise ordinary care to provide his servants a reasonably safe place to work, and reasonably safe tools, materials, and appliances with which to work, and a failure in either of these duties will subject the master to liability for all damages proximately resulting therefrom, through injuries to the servant.

### 5. Death—Recovery by "Children"—Amount.

Under section 5281, Rev. Laws 1910, the right of recovery is not limited to children of a deceased father to losses suffered during their minority, and they may recover for probable pecuniary loss after they reach their majority, but the recovery had, whether by minor or adult children, must be based upon the reasonable expectancy of pecuniary benefit, of which they were deprived by the death of their father.

### 6. Same—Verdict—Excessive Recovery.

Evidence examined, and held, that the verdict is excessive, and is not warranted by the facts proven.

Error from Superior Court, Creek County; Gaylord R. Wilcox, Judge.

Action by Bulah and Thelma Green, by P. J. Green, their guardian, against the Gypsy Oil Company, a corporation, for damages for death of their father. Judgment for plaintiffs and defendant brings errror. Affirmed on condition of a remittitur; otherwise, reversed and remanded for a new trial.

James B. Diggs, Rush Greenslade, and William C. Liedtke, for plaintiff in error.

Jarrett & Speakman, for defendants in error.

NICHOLSON, J. The parties hereto occupied reverse positions in the court below, and we will refer to them as they appeared there. The plaintiffs instituted this action against the defendant in the superior court of Creek county to recover damages on account of the death of their father, Henry Green. On the 28th day of November, 1919, a verdict was returned in favor of the plaintiffs for the sum of $20,000, upon which judgment was rendered.

On December 30, 1918, the deceased was an employe of the defendant, and on said day he and other employes of the defendant were instructed to pull the tubing from one of the defendant's oil wells. In pulling said tubing, it was necessary for one of the parties engaged in said work to stand on a tubing board constructed in the derrick, a distance of about 40 feet from the ground, and to reach said tubing board it was necessary to climb a ladder attached to the derrick. The deceased attempted to climb this ladder to reach the tubing board and, when he had climbed said ladder a distance of about 20 feet from the ground, the same pulled loose from the derrick

and fell with him, and by reason of such fall he sustained injuries which resulted in his death on the 22nd day of February, 1919. That part of the petition charging negligence on the part of the defendant is as follows:

"That said ladder was a part of the appliances, tools and machinery furnished by the defendant to said Henry Green to use in the course of his employment. That it thereby became the duty of the defendant to furnish the said Henry Green with a reasonably safe place in which to work and with reasonably safe tools, machinery and appliances with which to work. That the said defendant failed and made breach in its said duty toward the said Henry Green, in this, to wit: That the said ladder was improperly, inadequately, carelessly and negligently constructed, and nailed and fastened to the said derrick, and by reason thereof, the same was not reasonably safe for those who used it, and the said company had negligently and carelessly failed and refused to repair and to keep the said ladder so nailed and fastened to the said derrick as to make the same reasonably safe to protect and preserve the lives of those who used it.

"That on the last named date the said Henry Green while acting in the course of his employment, aforesaid, for the defendant company, without any fault or negligence on his part, and without knowledge on his part of the defective condition of the said ladder as above mentioned and set forth, the said Henry Green attempted to climb said ladder in the ordinary manner to perform his duties in assisting in pulling the tubing from the said well. That when the said Henry Green had climbed the ladder to the distance of about twenty feet, the said ladder, without fault or negligence on the part of the said Henry Green, and by reason of the fault, wrong, carelessness and negligence of the defendant as above stated, pulled loose from the top of the second section thereof, upon which the said Henry Green was then climbing, thus causing the ladder to swing backwards and downwards from the top, and at the same time to pry and pull loose from the bottom of said section, and to fall to the ground with the said Henry Green, and he falling a distance of about twenty feet, was thereby thrown upon the ground on his head and face, thus crushing, bruising and injuring his head, face and back and spinal column. That by reason thereof, three or four sections of the lower vertebrae were twisted, wrenched and fractured, and the said Henry Green did linger and languish and therefrom did thereafter die on the 22nd of February, 1919.

"That the said death of the said Henry Green was caused by the said wrongful, careless and negligent acts and omissions of the said defendant, and the wrongful and negligent acts and omissions of the said defendant in failing to provide and furnish the said Henry Green with a reasonably safe place and with reasonably safe tools, equipment

and machinery with which to perform the duties of his employment, while engaged in the employment of the defendant corporation, as above set forth, all without fault, carelessness, or negligence on the part of the said Henry Green.

"That the said defendant company knew and had notice of the defective, unsafe and dangerous condition of the said ladder at the time of the happening of the said accident, and knew and had notice that said ladder was not constructed in a reasonably safe manner, and said defendants did not exercise reasonable care and diligence to repair or maintain said ladder in a reasonably safe condition, or by the exercise of reasonable and ordinary care and diligence it could have obtained such knowledge, and that had the defendant exercised that degree of care and diligence as was commensurate with its duty in constructing and properly repairing and maintaining and nailing and fastening the said ladder to the said derrick, the accident herein complained of could and would not have happened, and would have been avoided."

To this petition the defendant filed a general demurrer, which was overruled and exceptions saved; and thereupon it filed answer, denying generally the allegations of the petition, and as further defenses pleaded contributory negligence on the part of said Henry Green, and the assumption of the risk of such employment by him. To which answer the plaintiff filed a reply, consisting of a general denial.

The plaintiff in error makes 29 assignments of error and has argued them in two groups, the first of which is based upon the refusal of the court to sustain defendant's demurrer to the evidence of the plaintiffs, and to give the peremptory instruction requested by the defendant, and goes to the sufficiency of the evidence to sustain the verdict and judgment.

The plaintiff in error argues that the ladder which fell with Henry Green had for approximately three years successfully withstood every test and strain to which it had been put, and had properly performed the functions it was intended to perform without injury to anyone, and without visible indication that the nails therein had become loosened by reason of the fact that the ladder had become covered and saturated with oil and paraffin; that the defendant was not required to construct this ladder in any particular way; that it was only obliged to exercise ordinary care to furnish its servants with a ladder so constructed and nailed as to be reasonably safe for the uses to which it was intended to be put, and the fact that the ladder fell as a result of the nails therein becoming loosened from the effect of the oil and paraffin on the wood of the ladder, is no evidence of negligence on the part of the

defendant to in the first instance furnish its servants with a reasonably safe ladder.

The evidence shows that the ladder which fell with the deceased was fastened to the second gird of the derrick with three 20-penny nails driven through the gird at one side and two at the other into the upright pieces at the top of the ladder; that the ladder was not nailed or in any manner fastened to the braces between the girds, and was in no way fastened at the lower end, and that the lower end lacked 10 or 12 inches of reaching the lower gird of the derrick, and from this evidence it appears that this ladder was simply permitted to hang from the second gird, fastened only by the nails driven through the top of the ladder. The evidence further shows that ladders of this kind are usually fastened to the derrick by nails driven through the gird into the ladder at the top and bottom thereof, and also by nails driven through the braces into the ladder, and, in fact, the ladder is usually nailed each place it touches the rig.

We agree with counsel for defendant that it was not required to construct this ladder in any particular way, if it was so constructed and nailed as to be reasonably safe for the uses required of it. A master has some discretion concerning the kind of machinery, tools, and appliances which he will use. He is not required to use machinery or tools of any particular pattern, nor appliances constructed in any particular manner, provided the machinery, tools, and appliances furnished his servants are sound and reasonably safe, and perform the work which they are designed to do; and the fact of accident carries with it no presumption of negligence on the part of the employer, but such negligence is an affirmative fact for the injured employe to establish by the evidence. Phoenix Printing Co. v. Durham, 32 Okla. 575, 122 Pac. 708; Palmer v. Wichita Falls & N. W. Ry. Co., 60 Okla. 205, 159 Pac. 1115. But the question of whether or not this ladder was so constructed, nailed, or fastened in the first instance as to be reasonably safe was a question of fact to be determined by the jury.

In Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120, the court says:

"Questions of negligence do not become questions of law, to be decided by the court, except where the facts are such that all reasonable men must draw the same conclusion from them, and the case should not be withdrawn from the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish. Anthony v. Bliss et al., 39 Okla. 237, 134 Pac. 1122; Gardner v. Michigan Cent. R. Co., 150 U. S. 349, 361, 14 Sup. Ct. 140, 37 L. Ed. 1107; Kreigh v. Westinghouse & Co., 214 U. S.

249, 29 Sup. Ct. 619, 53 L. Ed. 987; Grand Trunk R. Co. v. Ives, 144 U. S. 417, 12 Sup. Ct. 679, 36 L. Ed. 485."

And in New York Plate Glass Ins. Co. v. Katz, 51 Okla. 713, 152 Pac. 353, the syllabus is as follows:

"In a suit based on negligence, the court should submit the case to the jury, unless the evidence produced, together with all reasonable deductions and inferences to be fairly drawn therefrom entirely fails to show negligence upon the part of defendant. If the evidence fails entirely to show negligence then the court should instruct a verdict in favor of defendant."

And in Chicago, R. I. & P. Ry. Co. v. Felder, 56 Okla. 220, 155 Pac. 529, the court says:

"In cases involving the question of negligence, the rule is now settled that 'When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the court.' "

The defendant contends that the ladder furnished deceased was, at the time he entered defendant's employ, reasonably safe, and if thereafter it became unsafe, the defendant had no notice or knowledge, either actual or constructive, of its defective condition, and the evidence fails to show a duty on the part of the defendant to inspect the ladder and a failure on its part to perform that duty, or that a reasonably careful inspection would have revealed such defect. The evidence discloses that Henry Green entered the employ of the defendant on July 15, 1918, and that he was injured on December 30, 1918; that the ladder and the derrick to which it was fastened were covered with oil and paraffin to such an extent that the heads of the nails were not visible, and that men standing on the floor of the derrick could not see how many nails there were in the ladder or where the same was nailed, and this was the condition when Henry Green entered the employ of the defendant.

It was the undelegable duty of the defendant t · exercise ordinary care to provide Henry Green a reasonably safe place to work and reasonably safe tools, materials, and appliances with which to work, and if it failed in either of these duties, it was guilty of negligence, and was subject to liability' for any damages proximately resulting therefrom. Prickett v. Sulzberger & Sons Co., 57 Okla. 567. 157 Pac. 356; Choctaw Electric Co. v. Clark, 28 Okla. 399, 114 Pac. 730; Neeley v.

Southwestern Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145.

If the facts were such that all reasonable men must have drawn the conclusion that this ladder was properly constructed and securely fastened to the derrick in the first instance, but became unsafe by reason of it and the derrick becoming saturated with oil and paraffin, thereby causing the nails to loosen and pull out, then it would have been incumbent upon the plaintiffs to show by the evidence that the defendant had failed to make reasonably careful inspections at reasonable intervals, and that if such inspections had been made they would have disclosed the defects which lead to the injury in time to permit of its repairment, in the exercise of reasonable care, and a failure to make this showing would preclude a recovery. Thompson on Negligence, vol. 4, sec. 3803. And, if a reasonably careful and skillful inspection would not have disclosed the defects which caused the injury, there would be no liability even though such inspection had not been made. Thompson on Negligence, supra. Labatt's Master and Servant, vol. 3, sec. 1058. The facts being such that all reasonable men might draw different conclusions, therefore the trial court did not err in overruling the defendant's demurrer to the evidence, and in refusing to give the peremptory instruction requested by the defendant.

We will next consider assignment of error number 14, which attacks the correctness of instruction No. 6, which reads as follows:

"You are further instructed, that under the law of this state, the right of the children of the deceased father it not limited to the time of their minority, but extends to and after they attain the age of majority, but the recovery had whether by minor or by an adult child, must be based upon the reasonable expectancy of pecuniary benefit of which they were deprived by the death of their father."

And assignments of error Nos. 24 and 25, which are:

"The court below erred in rendering judgment on the verdict in the sum of $20,000; such judgment is excessive and unwarranted by the facts established at the trial of said action.

"That the amount of the verdict, twenty thousand dollars, is so excessive, that thereupon it appears that said verdict was given and returned under the influence of passion and prejudice upon the part of the jury."

The right of the plaintiffs to recover is governed by section 5281 and section 5282, Rev. Laws 1910, and a reading of section 5281 discloses that said section does not limit the recovery of the plaintiffs to the period of their minority, but provides:

"* * * The damages must inure to the exclusive benefit of the widow and children."

In City of Sapulpa v. Deason et al., 81 Okla. 51, 196 Pac. 544, the following language is found:

"What would fairly and reasonably compensate the plaintiffs for the loss sustained is the test, and not that if the deceased had lived out his life expectancy, as counsel for defendant in error seems to think should be the test. The minor children of the deceased, on attaining their respective majorities, would have no further claim for compensation by reason of the death of their father."

The defendant insists that this case is controlling, and that plaintiffs are precluded from a recovery for loss extending beyond their minority, but the statement, "The minor children of the deceased. on attaining their respective majorities, would have no further claim for compensation by reason of the death of their father," is obiter dictum, and an examination of this case shows that the verdict and judgment were held excessive for other reasons.

In Pressley et al. v. Incorporated Town of Sallisaw et al., 54 Okla. 747, 154 Pac. 660. the 5th paragraph of the syllabus reads as follows:

"Under section 5281, Rev. Laws 1910, the right of recovery is not limited to children of a deceased father up to their majority, but extends to all children of deceased, regardless of their ages; but the recovery had, whether by minor or adult children, must be based upon the reasonable expectancy of pecuniary benefit, of which they were deprived by the death of their father."

And in the body of the opinion, the court quotes from the decisions of a number of states holding that the children are not precluded from a recovery for loss extending beyond their minority. The correct rule seems to be that the recovery is not confined to losses sustained during minority, and that a child may recover for probable pecuniary loss after he reaches his majority.

While instruction No. 6, standing alone, might be objectionable, yet, when considered with instruction No. 7, giving the measure of damages, we cannot say that it was prejudicial to the defendant. These two instructions, considered together, fairly state the law, as announced in Pressley v. Incorporated Town of Sallisaw, supra; Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 Pac. 678, and Sedgwick on Damages, sec. 577.

We think the other instructions complained of and contained in the second group of assignments, when considered with the instructions as a whole, fairly state the law, and

that the defendant was not prejudiced thereby.

However, we are of the opinion that the jury erred in the amount of the recovery, and that the verdict is clearly in excess of the sum that could be based upon the idea of compensation alone.

It is therefore ordered that if the plaintiffs, within 30 days from the date of the receipt of the mandate herein by the trial court, file a remittitur for all of said judgment in excess of $12,500, and interest thereon from the date of the judgment at the rate of 6 per cent. per annum, the judgment, as thus modified will be affirmed; otherwise, the judgment is reversed, and the cause remanded, with directions to grant a new trial.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.